# AFFIDAVIT OF DEA TFO JAMES C. HIXSON

I, James C. Hixson, being duly sworn, depose and state as follows:

1. I am a Task Force Officer with the Drug Enforcement Administration (DEA) Field Office in Chattanooga, Tennessee. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been employed as a Police Officer with the Chattanooga Police Department for the past 21 years. I have been assigned as a Police Officer/Investigator in Narcotics/ Street Crimes Unit for three years. I am currently assigned as a Task Force Officer for the Drug Enforcement Administration (DEA) Resident Office in Chattanooga, Tennessee. I have been a Task Force Officer for the past 12 years. As a Police Officer/Investigator, I gained a working knowledge in narcotics trafficking methods and techniques. My present duties include the investigation of violations of federal law by individuals involved in the sale and distribution of controlled substances. I have had specialized training with respect to narcotics violations and have been involved in numerous investigations involving the seizure of controlled substances. I have obtained the information contained in this affidavit through personal observation and investigation, information related by fellow law enforcement officers, cooperating defendants, witnesses and informant statements.

3. This affidavit is submitted in support of the application for a search warrant of 805 Canal Street, Apartment 409, Chattanooga, Tennessee. The information contained in this affidavit has been related to your affiant by fellow law enforcement officers, cooperating defendants, witnesses, and Confidential Source information.

4. Based upon your affiant's training, experience, and participation in investigations involving large or numerous quantities of narcotics and/or controlled substances, your affiant knows:

That drug traffickers very often place assets in names other than their own to avoid detection of these assets by government agencies;

That even though these assets are in other persons' names, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

That narcotics traffickers maintain on hand large amounts of U.S. currency in order to maintain and finance their ongoing narcotics business;

That narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That narcotics traffickers commonly "front" (provide narcotics on consignment) controlled substances to their clients;

1

That the aforementioned books, records, receipts, notes, ledgers, etc. are maintained in their residences, businesses and/or other locations where the traffickers have ready access to them;

That it is common for drug dealers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations which they maintain dominion and control over, for ready access and to conceal these items from law enforcement authorities;

That it is common for persons involved in narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, safe deposit box keys, and money wrappers. These items are maintained by the narcotics trafficker within their residences, businesses, or other locations over which they maintain dominion and control;

That drug traffickers often utilize electronic equipment such as computers, facsimile machines, currency counting machines, video surveillance equipment, and telephone answering machines to generate, transfer, count, record and/or store information described in the aforementioned paragraphs above;

That, when drug traffickers amass large proceeds from the sale of narcotics, that the drug trafficker's attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize, including but not limited to, domestic and international banks and their attendant services, securities brokers, professionals such as attorneys, and accountants, real estate, and business fronts and otherwise legitimate businesses which generate large quantities of currency;

That drug traffickers commonly maintain addresses of telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

That drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product. That these traffickers usually maintain these photographs in their possession;

That drug traffickers commonly have in their possession (that is on their person, at their residences and/or their businesses) firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure a drug trafficker's property. Such property may include, but is not limited to narcotics, jewelry, narcotics paraphernalia, books, records and U.S. currency.

2

5. Affiant is aware that on or about May 13, 2016, the Chattanooga Police Department arrested an individual in Chattanooga with approximately an ounce of cocaine base ("crack"). The individual was on federal Supervised Release for a narcotics violation at the time of this arrest. The individual agreed to speak with law enforcement. The individual said that he had been buying multi-ounce quantities of cocaine from Martrell Arnold, also known as "Tricky Trell," for the past several months. Affiant is aware that Arnold is also on federal Supervised Release for a narcotics conviction. The individual said that, on at least one occasion in April of 2016, he rode in a vehicle with Arnold to the apartments located at 805 Canal Street, Chattanooga, Tennessee for the purpose of purchasing cocaine. While at the apartments, the individual remained in the vehicle while Arnold went into the building. Prior to leaving the vehicle, Arnold said he had to go up and get it (referencing the cocaine). Arnold went into the apartment building and then returned to the car with cocaine which he provided to the individual. The individual said that he has met Arnold at that location (805 Canal Street, Chattanooga, Tennessee) and purchased cocaine from Arnold multiple times. Arnold has never allowed the individual into the apartment, and the individual does not know which apartment number Arnold entered.

6. CPD received information from an apartment resident that Arnold frequents 805 Canal Street, Apartment 409, Chattanooga, Tennessee. Based on this information CPD was able to determine that Ms. Ashlei Ammons resides at 805 Canal Street, Apartment 409, Chattanooga, Tennessee. Affiant is familiar with Ms. Ammons from previous narcotics investigations. CPD corroborated the resident's information by conducting surveillance and observing Arnold and Ammons leave Apartment 409 together.

7. On June 8, 2016, law enforcement set up surveillance on 805 Canal Street, Apartment 409, Chattanooga, Tennessee. Based on this surveillance, affiant is aware that, at approximately 11:30 a.m., Arnold arrived at the apartment building. At approximately 1:30 pm Arnold left Apartment 409 and exited the apartment building. Arnold appeared to briefly meet with a black male (later identified as Octavious Mann) on the sidewalk of the apartment building. Mann had a black backpack on his back at the time. Arnold then returned to Apartment 409 with a bag. Surveillance did not notice Arnold carry a bag out of the apartment at 1:30 pm but also did not see Mann (or anyone else) hand Arnold the bag. Arnold was out of sight of surveillance for a short time, and surveillance did not view the complete interaction between Arnold and Mann. Arnold stayed in Apartment 409 for 10-15 minutes before he and Ms. Ammons exited the apartment and got into Ms. Ammons's car. Neither Arnold nor Ammons were carrying a bag. Based on the surveillance, affiant believes that the bag Arnold had is still located in 805 Canal Street, Apartment 409, Chattanooga, Tennessee. Ammons dropped Arnold off at his car, and Arnold left the apartment complex. Surveillance attempted to follow Arnold, but he eluded surveillance on the freeway by driving at speeds of over 100 mph.

8. Law enforcement also followed Mann after the apparent meeting with Arnold. Mann walked down the road to a hotel parking lot, but he did not enter the hotel. A woman driving a car with a North Carolina license plate then drove up quickly, and Mann got into the car, and they left the area. Law enforcement stopped the car for speeding (70 mph in a 55 mph zone) on Interstate 75 near the East Ridge exit. A trained narcotics dog alerted on the car, and

3

officers searched and found a small (user) amount of marijuana, a piece of paper with the address "805 Canal Street" handwritten on it, a black pack which contained a cell phone and charger, a wallet, a tool kit, and some condoms. Law enforcement also found a total of $2291. Mann and the driver said the money came from the driver's occupation, namely, she is a stripper. Specifically, she said had $1,900 from stripping.

9. Law enforcement interviewed Mann who in Affiant's opinion was untruthful. Specifically, Mann said he was from Atlanta and that on this date (June 8, 2016) he and his girlfriend drove to Chattanooga to see a waterfall. According to Mann they arrived at Spring Hill Suites (which Affiant knows is a hotel next to 805 Canal Street, Apartment 409, Chattanooga, Tennessee) where Mann got out of the car and tried to walk down to the water. Mann said he never actually made it to the water. Mann said that then his girlfriend came back to pick him up because they were late for a class in Atlanta and that when police stopped them they were on their way back to Atlanta. Mann admitted to being on the parking lot of 805 Canal Street, Chattanooga, Tennessee, but he denied talking to Arnold or anyone other than a white male who was a construction worker. Affiant is aware that surveillance never saw Mann speak with a white male while at 805 Canal Street, Chattanooga, Tennessee.

10. Mann gave consent to law enforcement to search his cell phone. Law enforcement found a text message to an Atlanta area code sent at approximately 1:11 pm on June 8, 2016, which read, "I'm in Tennessee." Mann explained that the text was just to a female friend alerting her he was in Tennessee. Based on this training and experience Affiant knows that Atlanta is a source city for Chattanooga narcotics dealing. Affiant also knows that drug sources in Atlanta frequently send drug delivery people or "mules" to deliver drugs to their Chattanooga customers. Based on his training and experience as well as Mann's incredible story regarding his brief trip to Chattanooga, Affiant believes that the text is likely a text to alert a drug source that Mann had made it safely to Chattanooga.

11. Affiant has spoken with Arnold's U.S. Probation Officer, and she stated that Arnold has not listed 805 Canal Street, Apartment 409, Chattanooga, Tennessee as a residence or Ms. Ammons as a girlfriend or associate. Affiant is aware that multiple confidential informants have informed law enforcement that Arnold is distributing cocaine in the Chattanooga area. Many of these confidential informants have proven reliable in that they have provided information that has led to the arrest and convictions of drug dealers on past occasions. Based on Affiant's training and experience Affiant is aware that drug dealers often use "stash houses" to hide their drugs and drug proceeds which are addresses not associated with the drug dealer.

12. Affiant submits that probable cause exists to have the residence/premises/property, located at 805 Canal Street, Apartment 409, Chattanooga, Tennessee searched for the following items (And as more fully described in Attachment A to this Affidavit):

   a. Books, photographs, records, receipts, notes, ledgers and other papers which show the transportation, ordering, purchase, distribution, possession, sale or manufacture of controlled substances;

   b. Address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers, written or typed by hand as opposed to printed commercially;

   c. Books, letters, records, computerized and electronic records, receipts, bank statements and records, money drafts, letters of credit, wire transfers, safe deposit box keys, money order and cashier's check receipts, passbooks, bank checks, and other items that reflect the expenditure, obtaining, secreting, transfer or concealment of drug proceeds;

   d. United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, notes and other documents showing an accumulation of assets, wealth, or money to the extent that these items are found in such quantity, substance and/or quality as to permit a reasonable inference that such items are proceeds of drug trafficking;

   e. Controlled substances, material and paraphernalia for manufacturing, packaging, cutting, weighing and distributing controlled substances (cocaine) to include but not limited to scales, baggies, packing material;

   f. Indicia of occupancy, residency, and/or ownership of the premises described above and other real property, including but not limited to deeds, utility and telephone bills, canceled envelopes and keys;

   g. Papers, tickets, notes schedules, receipts and other documents relating to travel to and from drug source areas and drug distribution areas;

   h. Firearms;

   i. All Cellular telephones, including the electronic address book, stored memory feature and the SIM card (or similar type of electronic data storage card) of the cellular telephone;

   j. Any and all other material evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

5

_James Hixson, AFFIANT_

Sworn to before me and subscribed
in my presence, this 8th day of June, 2016,
at Chattanooga, Tennessee.

_Christopher H. Steger_
United States Magistrate Judge

6

Case 1:16-mj-00155-CHS   Document 2   Filed 06/08/16   Page 6 of 7   PageID #: 7

## ATTACHMENT A

Items to Be Searched for at the Residence/Premises/Property located at 805 Canal Street, Apartment 409, Chattanooga, Tennessee:

(1) Books, photographs, records, receipts, notes, ledgers and other papers which show the transportation, ordering, purchase, distribution, possession, sale or manufacture of controlled substances;

(2) Address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers, written or typed by hand as opposed to printed commercially;

(3) Books, letters, records, computerized and electronic records, receipts, bank statements and records, money drafts, letters of credit, wire transfers, safe deposit box keys, money order and cashier's check receipts, passbooks, bank checks, and other items that reflect the expenditure, obtaining, secreting, transfer or concealment of drug proceeds;

(4) United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, notes and other documents showing an accumulation of assets, wealth, or money to the extent that these items are found in such quantity, substance and/or quality as to permit a reasonable inference that such items are proceeds of drug trafficking;

(5) Controlled substances, material and paraphernalia for manufacturing, packaging, cutting, weighing and distributing controlled substances, in particular marijuana but not limited to scales, baggies, packing material;

(6) Indicia of occupancy, residency, and/or ownership of the premises described above and other real property, including but not limited to deeds, utility and telephone bills, canceled envelopes and keys;

(7) Papers, tickets, notes, schedules, receipts and other documents relating to travel to and from drug source areas and drug distribution areas;

(8) Firearms;

(9) Cellular telephones, including the electronic address book, stored memory feature and the SIM card (or similar type of electronic data storage card) of the cellular telephone; and Pagers.

(10) Any and all other material evidence of violations of 21 U.S.C. §§ 841(a)(1), 846.